THE PACIFIC ROLLING MILL v. THE DAYTON, SHERIDAN & GRANDE RONDE RAILWAY Co. and others.

*(Circuit Court, D. Oregon.* February 25, 1881.)

1. ATTORNEY FEE — UNAUTHORIZED CONTRACT FOR, IN MORTGAGE OF CORPORATION.

A vote of the directors of a corporation, instructing their president and secretary to execute a mortgage to secure the payment of a specific debt, does not authorize the insertion of a contract in such mortgage binding the corporation to pay the mortgagee an attorney fee in case legal proceedings were taken to enforce the same.

2. RATIFICATION OF UNAUTHORIZED ACT.

A majority of the directors of a corporation, at a meeting at which all the directors were not present, and of which they had no notice, directed the president and secretary to execute a mortgage as above stated, and they inserted therein a contract to pay an attorney fee as above stated. Subsequently the directors, at a meeting duly called, ratified such mortgage, without any knowledge of its contents, except as indicated by the order for its execution in the records of the corporation. *Held,* (1) that the contract to pay an attorney fee not being authorized by the original order, and not being a necessary part of the mortgage, was not included in this ratification, unless it affirmatively appeared that the directors all and collectively were then aware that it was in the mortgage; and (2) that the directors might be presumed to know what was in the records of the corporation, but not what was in a mortgage executed by the president and secretary without the authority or knowledge of the corporation, or the record of it in the county records.

In Equity.

*Addison C. Gibbs, John Catlin,* and *Edward Bingham,* for plaintiff.

*Ellis G. Hughes,* for the defendants, the railway corporations, and Joseph Gaston.

DEADY, D. J.   On February 14, 1878, the defendant—the Dayton, Sheridan & Grande Ronde Railway Company, of Oregon—by Joseph Gaston, its agent, and owner of a majority of its capital stock, agreed in writing with the plaintiff —the Pacific Rolling Mill Company, of California—for the purchase of rails and track fixtures for the construction of its road from Dayton to Sheridan, a distance of about 20 miles, and to secure the payment for the same by the execution of a mortgage upon the road and other property of said defendant, and also the execution of a mortgage by said Gaston upon the property situated in Washington and Yamhill counties, Oregon, known as "Wapatoo Ranch," containing 1,160.58 acres; and on March 22, 1878, said agreement was duly ratified by said defendant, and thereafter the plaintiff, in pursuance thereof, delivered to said defendant rails and track fixtures, for the construction of its road, to the value of $62,724.56.

On November 5, 1878, at a special meeting of three of the directors of said defendant, without notice to the other two, there being five in all, it was unanimously voted that there was due the plaintiff, on account of the delivery of the rails and fixtures aforesaid, the sum aforesaid, with interest thereon at 1 per cent. per month, and that the president and secretary thereof make 15 promissory notes of said defendant, payable to the plaintiff, for said sum, and execute a mortgage on the road and all other property of said defendant, to secure the payment of the same, which was duly done on the same day—the first of said notes being for the sum of $8,000, and payable on December 1, 1878, and the next 13 for the sum of $4,000 each, payable, one upon January 1, 1879, and one on the first of each month thereafter, and the last one for the sum of $2,724.56, payable on February 1, 1880; and on the same day said Gaston signed said promissory notes also, and,

to secure the payment thereof, together with his wife, duly executed a mortgage of the Wapatoo ranch aforesaid; which mortgages were duly recorded, the first on the seventh and the second on the sixteenth of the November following.

On October 31, 1878, said Gaston, as agent of said defendant, agreed in writing with the plaintiff for the purchase of the rails and track fixtures for the construction of the Dallas extension of said railway, a distance of about 12 miles, for the payment of which said defendant and Gaston were to make their promissory notes, secured by their several mortgages upon the road and all the real property owned by either of them, which agreement was unanimously ratified and adopted at the meeting of the three directors, held November 5th, as aforesaid.

On December 4, 1878, at a special meeting of three of the directors of said defendant, without notice to the other two, there being five in all, it was unanimously voted that there was due said defendant, on account of rails and track fixtures, delivered under the agreement of October 31st, aforesaid, the sum of $27,134, with interest at 1 per cent. per month, payable as follows: $13,567 on January 1, 1879; $2,000 on the first of each month thereafter, to and inclusive of July, 1879; and $1,567 on August 1st of the same year; and that the president and secretary of said defendant make eight promissory notes, payable as aforesaid to the plaintiff, for said eight sums, and execute a mortgage on the road and all other property of said defendant to secure the payment of the same, which was duly done on the same day; and on the same day said Gaston signed said eight notes as maker, and to secure the payment of the same, together with his wife, duly executed a mortgage on certain parcels of real property, situate in Washington and Yamhill counties, Oregon, containing 1,160.58 acres, which mortgages were duly recorded, the first on the twenty-third and the second on the fourteenth of December, 1878.

On April 15, 1879, at a meeting of the directors, duly held pursuant to a call by the president, at which three directors were present, it was unanimously voted that the president

and secretary of said defendant make a promissory note, payable to the plaintiff, for the sum of $4,058, payable on or before May 10, 1879, and execute a mortgage on the road and all other property of said defendant to secure the payment of the same; and on April 28, 1879, pursuant to a call by the president, and upon due notice to each director of said defendant, a meeting of said directors was held, at which four thereof were present, when it was unanimously voted that said sum of $4,058 was due the plaintiff, and the proceedings of the meeting of April 15th aforesaid duly approved; and on May 7, 1879, said defendant and said Gaston made their joint promissory note for said sum, with interest at the rate of 12 per centum per annum, payable to the plaintiff, and on the same day said defendant executed a mortgage on its road and all other property to secure the payment of the same, which was duly recorded on May 14, 1879.

No payment having been made on any of those notes, the plaintiff, on January 11, 1879, in pursuance of a stipulation in the mortgages, declared them all due; and on the twenty-third of the same month commenced this suit to enforce the lien of the mortgages to secure the same. Upon the filing of the bill, an injunction was allowed and a receiver appointed. It is not necessary to state the grounds upon which the other parties were made defendants, further than that the Wallamet Valley Railroad Company became, by purchase, the successor in interest of the Dayton, Sheridan & Grand Ronde Railway Company, in pursuance of a vote of directors of the latter on January 8, 1879, and a conveyance of its road and franchise on June 5th, thereafter; and that the others had, or claimed, liens upon the property for the value of services and materials furnished in the construction of the road. Upon the direction of the court, the receiver borrowed money wherewith to put the road in working order and pay the claim of the defendants U. B. Scott & Co., allowed at $1,719.05, for freight and storage of rails belonging to the road.

The defendants, except the Dayton, Sheridan & Grand Ronde Railway Company, the Wallamet Valley Railway Company,

and Joseph Gaston, answered, setting up their respective claims and liens by mortgage, judgment, and otherwise; and these three defendants answered jointly, admitting the purchase and delivery of the rails and fixtures, at the alleged price, but denying the validity of the first and second series of notes and the two mortgages to secure them, made in the name of the Dayton, Sheridan & Grand Ronde Railway Company, for the reason that the directors were not all present at, or notified of the meetings of, November 5th and December 4th at which they were authorized, but admitting the validity of the note and mortgage for $4,058, and all the notes and mortgages made by Gaston.

By reason of a subsequent ratification of these acts, it is not necessary to decide the question: Can a majority of the directors of an Oregon corporation exercise any of the powers vested in the directors without the presence of or due notice to the others? The plaintiff affirms that they can, relying upon the clause in section 11 of the corporation act, (Or. Laws, 527,) which reads: "The powers vested in the directors may be exercised by a majority of them." But the defendant insists that while a majority may exercise any power vested in the directors, yet they can only do so at a lawful meeting of the directors; that is, a meeting where all are present and may be heard, or have had due notice of the same and might be present if they would.

By stipulation, filed April 17, 1880, it was admitted that the plaintiff had received $109,704.50 in payment of the notes sued on, when the injunction was dissolved and the receiver discharged, but the suit was continued to determine the validity of the claim of the plaintiff to recover attorney fees, upon which question the case has been argued and submitted.

The claim arises in this way: In each of the mortgages made by the Dayton, Sheridan & Grand Ronde Railway Company, and also those made by Joseph Gaston, there is a stipulation for the recovery of an attorney fee, in the event of legal proceedings being taken to recover the sums, thereby secured. The sums agreed upon to be recovered as such fee

in each case are as follows:   For the sum of $62,724.56 by
the Dayton, Sheridan & Grand Ronde Railway Company
mortgage, 4 per centum—$2,508—of the amount, and by the
Gaston mortgage, $1,000; for the sum of $27,134, by the
mortgage of the former and the latter, each $1,000; and for
the sum of $4,058, by the mortgage of the former, $200—in
all the sum of $5,708.

On January 8 and April 28, 1879, meetings of the direct-
ors of the defendant the Dayton, Sheridan & Grand Ronde
Railway Company were held, which are admitted to have
been duly called and valid.   At each of these, action was
taken to sell and convey the property and franchise of said
defendant to the defendant the Wallamet Valley Railway
Company, upon the condition that the latter would pay the
debts of the former, in which these mortgages were referred
to, recognized, and approved.

This statement is substantially admitted by counsel for the
defendants, but his contention and argument is that an
authority to the president and secretary of a corporation to
make its note and mortgage for a specified sum does not
include a contract to pay an attorney fee, in case legal pro-
ceedings are taken to enforce the same.   In this case the vote
of the directors only authorized the making of the mortgages
for a specific sum, and is silent upon the subject of attorney
fees.   But it is contended for the plaintiff that the subse-
quent recognition and approval of these mortgages must be
taken and construed as applying to every provision contained
in them, as they were in fact executed, and not simply to the
order in the records of the corporation directing the execu-
tion of a mortgage.

As to the question, did the direction to the president and
secretary to make the mortgage of the corporation to secure
the payment of a specific sum also authorize them to insert
a contract therein to pay an attorney fee to the mortgagee
in case the same was sued upon? my opinion is that it did
not.   They were the special agents of the corporation to do
a particular thing,—to execute a mortgage,—and if they

exceeded this authority their principal was not bound by it. Story on Agency, §§ 17, 126.

It is not claimed that there was any specific authority to insert this contract concerning an attorney fee in the mortgage; nor is there anything in the nature of the act authorized, or the evidence in the case, which tends to show that the insertion of such a contract was implied in the authority to make the mortgage, as being a necessary part of it, or that it was authorized by any general usage or established course of dealing between the parties, in reference to which it might be inferred that they acted in the execution and acceptance of the mortgage. No authorities have been cited upon the point, and I rest the decision of it upon the application of general principles to the particular circumstances.

But it is contended on behalf of the plaintiff that the ratification of these mortgages must be taken and construed as extending to every provision contained in them, as they were, in fact, executed, and not simply to the order directing their execution. Which of these constructions should be given to this ratification depends upon the evidence, the burden of proof being on the plaintiff, and the rule of the law, "that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with a full knowledge of all the material facts." *Owings* v. *Hull*, 9 Pet. 629.

It may be admitted that the president and secretary—two of the directors—knew of this provision in the mortgages; but they were not the corporation, nor their knowledge that of the other directors. It should appear that the directors had such knowledge collectively, as a body; but it does not even appear that any of them knew of this contract, save the president and secretary. The directors may be presumed to know what was in their own records, but there was not in them even a suggestion that these instruments contained anything not absolutely necessary to a mortgage. But there is no presumption that the directors had seen these mortgages on the records of the county wherein they were recorded or elsewhere; nor does the fact of such record impart to them, as

directors, or to the corporation, even constructive notice of their contents.

The reasonable conclusion to be drawn from the evidence is that the directors, referring to and approving of the mortgages on January 8 and April 28, 1880, theretofore given to the plaintiff, had reference to and approved of only such acts as it appeared from their records that a majority of their body had assumed the right to direct their president and secretary to do and perform.

It follows that the ratification of those mortgages did not include the special provision for an attorney fee. The fact of its existence does not appear to have been known to the directors at the time of the ratification, and therefore it was not within their contemplation.

The contracts inserted in the mortgages of the corporation by the president and secretary, being unauthorized and unratified, cannot be enforced against it.

Objection is also made to the enforcement of the contract for an attorney fee in the mortgages made by Gaston, but upon what ground does not appear. The matter needs only to be stated to show the futility of the objection. Gaston made two mortgages to secure the payment of his promissory notes to the plaintiff, for the sums of $62,724.56 and $27,134 respectively, and expressly agreed therein that if legal proceedings were taken to enforce the same, that by way of indemnifying the plaintiff against the costs and expenses thereof, it should be entitled to recover against him, in addition to the debt, an attorney fee of $1,000 in each case. This was a lawful contract, lawfully made. *Wilson Sewing Machine Co.* v. *Moreno,* U. S. C. C. Dist. Or., Aug. 18, 1879; *Bank of Brit. N. A.* v. *Ellis,* 2 FED. REP. 44. The contingency has arisen. The mortgagor failed to pay his debt and the mortgagee has been put to the expense of enforcing his claim by litigation, and is entitled to recover, as against Gaston, and enforce his mortgages, for the sum of $2,000.

There must be a decree reciting the fact of the payment of the principal and interest due the plaintiff, as above stated, and the payment of costs up to that time, and dis-

missing the bill as to all the defendants except Gaston; and that the plaintiff recover of him said sum of $2,000, and costs and expenses, to be taxed, and for a sale of the mortgaged premises by the master of this court, if the decree is not satisfied within 10 days from the entry thereof.